## CONSOLIDATED UNDERWRITERS v. DUNN et al.

### No. 2175.

Court of Civil Appeals of Texas. Eastland.

Oct. 10, 1941

Rehearing Denied Oct. 31, 1941.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellants.

Chaney, DeShazo & Hyde, of Dallas, for appellee.

GRISSOM, Justice.

This is a workmen's compensation case in which Mrs. Camie Dunn recovered compensation for the death of her husband. A. M. Dunn, deceased, for sometime prior to November 1938 had been construction foreman for Neuhoff Brothers Packers, Inc., who carried a compensation insurance policy on its employees with Consolidated Underwriters. In January, 1938, Dunn made application for an insurance policy; he was examined by a physician and rejected because he had high blood pressure. On the trial of this case it was alleged, in effect, and there was evidence tending to show that Dunn had high blood pressure and that, while he was engaged in the discharge of his duties with Neuhoff Brothers, on November 23, 1938, a box on which he was standing tilted causing Dunn to fall or slide to the floor, landing on his feet. That on the night of the 23d and the following day, which was a holiday, Dunn did not appear to be well, ate very little, had a headache and vomited, and on the 25th of November returned to his work; that at different times on the 26th of November he broke out sections of a hard concrete wall by beating it with sledge hammers; that the sledge hammers weighed from 8 to 20 pounds; that on the morning of the 26th of November at one time Dunn beat on the wall with a sledge hammer for 30 minutes; that he came back in the afternoon and used the sledge hammer several times; that in the afternoon he got sick and was carried to a hospital; that just before he got sick he had been breaking the concrete wall with a sledge hammer. That he leaned over the wall and then slumped down against it. A witness picked him up. He could not stand on his feet. The witnesses picked him up where he was lying by the side of the wall and he was sent to a hospital where he was examined by a physician. His blood pressure then was

*220* systolic and *90* diastolic. Mr. Dunn died the following day. All of the medical testimony was to the effect that Mr. Dunn's death was caused by a cerebral hemorrhage, and that when he was brought into the hospital the right side of his body, his arms and legs and the left side of his face were paralyzed. The evidence shows Dunn was about 45 years of age and was suffering from high blood pressure. At the time Mr. Dunn was examined by Dr. Deatheridge for the purpose of passing upon Dunn's application for an insurance policy in January 1938, his blood pressure was 198 systolic and 118 diastolic. Dr. Deatheridge testified, in answer to hypothetical questions, that in his opinion the falling or sliding from the box on November 23d and the muscular exertion and strain induced by use of the sledge hammer and the excitement and nervous strain incident thereto, operated upon his then existing high blood pressure causing the blood pressure to become still higher and producing a cerebral hemorrhage that caused his death.

Defendant presented motions for an instructed verdict and a motion for judgment notwithstanding the verdict. Each of said motions was overruled. The cause was submitted to the jury on special issues which were answered favorably to plaintiffs, and judgment was rendered thereon for plaintiffs.

The following issue, among others, was submitted to the jury and answered as hereinafter shown: "Special Issue No. 4: Do you find from a preponderance of the evidence that A. M. Dunn, deceased, while using said sledge hammer, if you have so found, sustained an accidental injury at the time, and on the occasion in question? Answer: Yes."

The jury had found that Dunn was Neuhoff's employee and that Dunn had used a sledge hammer on November 26th in the course of his employment. The defendant has appealed.

Defendant contends the court should have instructed a verdict for it because plaintiffs did not discharge the burden of proof resting upon them to show that Dunn received an accidental injury. Defendant says there being "no evidence of any unusual strain or lifting or exertion, it is obvious that the burden of proof was not discharged by the claimants of compensation and that an instructed verdict should have been given * * *." Said proposition is overruled.

■ We think the evidence is sufficient to show that this construction foreman had high blood pressure; that on November 26th he used heavy sledge hammers to break a hard concrete wall; that he had not felt well since two or three days prior thereto when he slipped from a box, and that while he was using a sledge hammer he became suddenly sick, leaned over the wall he was beating on and fell to the floor. That he was picked up and removed to a hospital where he was found to be paralyzed as a result of a hemorrhage of the brain. This evidence is sufficient to sustain a finding of an accidental injury that was a producing cause of Dunn's death. A hemorrhage of the brain of a person, afflicted with high blood pressure, caused by overexertion from the use of a heavy sledge hammer on a hard concrete wall, within the course of his employment, is sufficient to show an accidental injury in the course of his employment. Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581, 584; Consolidated Underwriters v. Christal, Tex. Civ.App., 135 S.W.2d 127, writ refused; Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956, 960; Theago v. Royal Ind. Co., Tex.Civ.App., 70 S. W.2d 473, 475; 45 Tex.Jur. 494.

The foregoing statement and conclusion necessitate the overruling of defendant's second proposition to the effect that we should reverse the judgment on the ground the verdict is clearly wrong.

■ Issue No. 4 inquiring whether Dunn "*while* using said sledge hammer * * * sustained an accidental injury * * *" was objected to by the defendant because, among other things, the issue was so "vague, general and indefinite as not to apprise the jury of what issue of fact the court wishes the jury to answer", and for the further reason that the issue did not confine the jury in answering it to plaintiffs' pleadings and to the evidence and because it permitted the jury to take into consideration matters not pleaded or proved by plaintiffs. Plaintiffs had alleged "that the over-exertion of himself in using said sledge hammer caused the deceased to suffer a cerebral hemorrhage which immediately followed the use of the sledge hammer" and "that said overexertion in the use of the sledge hammer was the immediate proximate and/or contributing cause of the cerebral hemorrhage and that the said A. M. Dunn * * * died as a direct and proximate result of the accidental in-

jury sustained by the over-exertion in using said sledge hammer."

Plaintiffs evidently tried the case upon the theory that the deceased had high blood pressure; that he fell or slipped from a box on the 23d and that on November 26th he over-exerted himself in using the sledge hammer to the extent that it raised his blood pressure sufficiently high to rupture a blood vessel and cause a cerebral hemorrhage. It appears to be undisputed that "while using said sledge hammer" Mr. Dunn sustained a cerebral hemorrhage. The real question then was whether the hemorrhage was caused by over-exertion in using the hammer. Asking the jury whether or not Dunn *"while* using said hammer * * * sustained an injury" was certainly not equivalent to inquiring whether, as alleged by plaintiffs, Dunn's over-exertion in using the hammer caused the hemorrhage that killed him. In other words, it is evident the pre-existing high blood pressure could have caused the hemorrhage while deceased was using the sledge hammer without the hemorrhage having been caused by the act he was then doing. Under a similar situation the submission of such an issue over substantially the same objections was held to be reversible error in Fidelity & Cas. Co. v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550. Defendant's third and fourth propositions are sustained. Security Mutual Cas. Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552, 555; Southern Underwriters v. Wright, Tex.Civ.App., 142 S.W.2d 297, 300.

Defendant's sixth proposition is that the trial court did not have jurisdiction of this cause for the reason that the suit "as tried * * * did not involve the same claim presented to the Industrial Accident Board." The claim for compensation presented to the Industrial Accident Board by Mrs. Dunn stated that she claimed compensation "on account of the death of A. M. Dunn on the 27th day of November, 1938, which resulted from injuries sustained on the 23rd day of November, 1938, while in the employ of Neuhoff Brothers, Packers, Inc.

"The place of injury was Neuhoff Brothers, Packers, Inc. 2821 Alamo Street, Dallas, Texas.

"The cause of death was fell and injured on his head, shoulders, back, legs and other parts of his body and internal resulting in cerebral hemorrhage."

Plaintiffs, in their original petition, alleged: "That said A. M. Dunn, deceased, was employed as foreman of the construction for the Neuhoff Brothers Packers, Inc. on a construction job at their packing plant located at 2821 Alamo Street in the City of Dallas, Dallas County, Texas; that on or about the 23rd day of November, 1938, while he was acting in the due course and scope of his employment for his employer, and while placing a door to fill an opening, the door being on the opposite side from A. M. Dunn, deceased, he was standing on a box about two or more feet high which turned over and caused him to be violently thrown onto and against a raw rough concrete floor and against a large motor and as a direct and proximate result thereof he sustained and suffered a severe blow and bruise to his head, affecting the tendons, leaders, ligaments, muscles, muscular movements, blood vessels, and nerves leading to and from the brain cells, and tearing and bruising said tendons, leaders, ligaments, muscles and muscular movements, blood vessels and nerves of the brain; that the deceased further suffered a severe blow and bruise, jerk and wrench to his back and spine in and around the lumbar region; that the blood vessels leading to and from the deceased's spine were torn and bruised. Plaintiffs will show that deceased continued to carry out his duties in the due course of his employment until on the 26th day of November, 1938, at which time as a result of his said injuries, he had a cerebral hemorrhage which caused him to lose consciousness; that on the said date he was carried to St. Paul Hospital and remained in an unconscious condition until on or about the 27th day of November, 1938, he died as a direct and proximate result of the injuries which he sustained to his head and spine."

In their amended petition plaintiffs alleged: "Plaintiffs further represent and show to the court that said A. M. Dunn, deceased, was employed as foreman of construction for the Neuhoff Brothers, Packers, Inc., on a construction job in their packing plant located at 2821 Alamo Street in the City of Dallas, Dallas County, Texas; that on or about the 23rd day of November, 1938, while he was acting in the due course and scope of his employment for his employer and while placing a door to fill an opening, the door being on the opposite side from A. M. Dunn, deceased, he was standing on a box about two or more feet high which turned over and caused

him to be violently thrown onto and against a concrete floor and against a large motor and as a direct and proximate result of said fall he' sustained a severe blow and bruise to his head, affecting the nerves and blood vessels, leading to and from the brain cells; that prior thereto and at the time of said accident the deceased A. M. Dunn, was suffering from high blood pressure and hyper-tension; that said accident and injuries sustained on the 23rd day of November, 1938, aggravated said high blood pressure and hyper-tension and caused him to suffer headaches and pain, but that the deceased continued to carry out his duties in the due course of his employment until on the 26th day of November, 1938, the said deceased while he was acting in the due course and scope of his employment for his employer took a sledge hammer and used the same in striking and breaking concrete; that immediately after he had used said sledge hammer and handed the sledge hammer to a fellow workman and was very sick and a few minutes later slumped to the floor in an unconscious condition; that the over-exertion of himself in using said sledge hammer caused the deceased to suffer a cerebral hemorrhage which immediately followed the use of the sledge hammer, the said cerebral hemorrhage caused him to lose consciousness and to lose the use of one side of his body and produced his death on the 27th day of November, 1938; that said over-exertion in the use of the sledge hammer was the immediate proximate and/or contributing cause of the cerebral hemorrhage and that the said A. M. Dunn, deceased, died as a direct and proximate result of the accidental injuries sustained by the over-exertion in using said sledge hammer."

The real question in controversy before the Industrial Accident Board seems to have been whether deceased suffered an accidental injury. That board found plaintiffs had "failed to establish by proof that A. M. Dunn, deceased, suffered an accidental injury in course of employment for subscribing employer resulting in his death as alleged." Defendant's answer filed with the Board stated it denied liability for payment of compensation "contending that death was due to natural causes and not to trauma." The defendant submitted to the board the statements of Joe and Henry Neuhoff, Medlock, Daniels and Doctors Selecman and Brown, in support of its contention before the board, that no accident occurred, but that deceased merely became ill while on the job and his death was due to natural causes. The statement of Henry Neuhoff was with reference to the occurrence in his plant on November 26, "when Mr. Dunn had an attack and was sent to the hospital." (This could only refer to November 26th when Dunn suffered a cerebral hemorrhage.) He said Mr. Dunn had "no accident on our job either the day he was sent to the hospital or any other day so far as we * * * know * * *." The statement of Medlock was with reference to Mr. Dunn becoming ill while working with a sledge hammer on a wall, which was evidently on November 26 and after Dunn's fall from a box on the 23d. Statement of Joe Neuhoff was to the effect that Mr. Dunn became violently ill at the time he was working on a wall and that he had not had an accident, and that he was informed by the attending physician and Mrs. Dunn that deceased had high blood pressure. Likewise, the statement of Curtis Daniels was with reference to the illness of Mr. Dunn immediately following his work upon a concrete wall with a sledge hammer. There was also presented to the board a report of Mr. Dunn's condition while at the hospital, made by Drs. Selecman and Brown. This report showed that while Mr. Dunn was at work he suddenly fell to the floor and was immediately unconscious. They then detailed his condition when he was admitted to the hospital at 1:30 P.M. on November 26, "a few minutes after he had fallen * * *." It showed he was then paralyzed, that the doctors' immediate diagnosis was "hemorrhage in the brain producing shock and hemiplegia." Much of the report is taken up with the patient's history, especially with reference to symptoms of high blood pressure. The report ended with the conclusion deceased had suffered for years from high blood pressure and that the "attack which occurred on November 26, 1938 was * * * a result of the rupture of a cerebral blood vessel, and his death was due to extensive hemorrhage into the brain * * *."

While many of the matters above referred to have no compelling weight on the question to be decided taken in the aggregate they demonstrate that the question actually presented to and decided by the Industrial Accident Board was whether, about November 26, 1938, deceased suffered an accidental injury causing his death. Just when and by whom and in what connection some of these statements were presented to the board is not shown. Due to

the extreme informality of such a proceeding before said board we are not able to say, as a matter of law, that the claim presented to the board was another and different claim from that recovered on in the trial of this case. Under the following authorities, the action of the trial court in overruling the plea to the jurisdiction cannot be held to be reversible error. Jarrett v. Travelers' Ins. Co., Tex.Civ.App., 66 S. W.2d 415; Texas Emp. Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752; Traders & Gen. Ins. Co. v. Huntsman, Tex.Civ. App., 125 S.W.2d 431, 435; United States F. & G. Co. v. Baker, Tex.Civ.App., 65 S. W.2d 344, 347; Texas Emp. Ins. Ass'n v. Wright, Tex.Civ.App., 118 S.W.2d 433, 439; Booth v. Texas Emp. Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322; Ocean Acc. & Guarantee Corp. v. Pruitt, Tex.Com.App., 58 S.W.2d 41.

The questions presented by the remaining propositions need not arise upon another trial.

The judgment is reversed and the cause remanded.